STANSELL & YOUNGER v. W. D. CLEVELAND.

(Case No. 1917.)

1. MALICIOUS PROSECUTION.— To sustain a suit for malicious prosecution plaintiff must prove malice and want of probable cause. To sustain an averment of malice in a suit for malicious prosecution, the plaintiff must show that the charge against him was wilfully false. Malice may be proved from direct evidence, or it may be inferred from circumstances.

2. SAME.— Malice may be inferred by the jury from the want of probable cause. It is no inference of law, but can be repelled by facts and circumstances indicating a fair and legitimate purpose, and an honest pursuit of a claim believed to be just.

3. PROBABLE CAUSE.— Probable cause may consist of such facts as lead to the inference that the party was actuated by a reasonable conviction of the justice of his suit, and it must appear that he became acquainted with those facts before bringing the suit. (See opinion for facts held likely to constitute probable cause.)

4. AGENT.— As a party is liable for the acts of his agent, so he is entitled to the benefit of his agent's knowledge of facts justifying the bringing of suit.

5. EVIDENCE — MALICE.— The mere fact that a creditor examined the records and was satisfied with the condition of a firm, and a short time afterwards attached its property, there being only one mortgage on the firm property when the records were examined, but several when the attachment was issued, does not prove malice.

6. CHARGE — MALICE.— It is erroneous in instructing the jury to limit the definition of malice to "personal spite or ill-will of one person towards another."

7. EVIDENCE.— The wrongful admission of cumulative evidence upon a matter already proven beyond all doubt is no ground for reversal.

8. ATTACHMENT — ATTORNEYS' FEES.— A note provided that ten per cent. attorneys' fees were to be paid if the note was collected by law. An attachment was sued out before the note was due, and the goods were replevied by defendant; the note was not paid at maturity. Held:

(1) That since the petition claimed the attorneys' fees, and the answer admitted all indebtedness claimed in the petition, judgment was rightfully given for the attorneys' fees against defendant, and the note not being paid at maturity, authorized plaintiff to proceed to judgment.

(2) That $500 damages recovered by the defendant in reconvention was rightfully applied to the payment of interest and attorneys' fees before deducting any portion of it from the principal debt.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

The appellants, Stansell & Younger, were retail merchants, having two stores in Navarro county, one at Dawson, the other at Cross Roads. They were indebted to W. D. Cleveland, the appellee, in the sum of $1,993.93, to wit: two notes, dated 1st of February, 1884, one for $937.51, due 1st of June, 1884, the other for $937.52, due 1st of July, 1884; also an open account for $118.60. On the

16th day of March, 1884, before either of the notes became due, W. D. Cleveland sued out a writ of attachment, and had the same levied on the merchandise of both stores of appellants, closing both houses and the business of appellants. The attachment bond was prepared in Houston by plaintiff on the 15th of March, the day before the levy. On the 16th March, Sunday morning, the United States marshal made a levy on a part of the goods, by virtue of an attachment sued out of the United States circuit court at Dallas at the instance of the Moline Plow Company on a debt of about $1,500, not due. The United States marshal levied on about $2,000 worth of the goods at Dawson, but did not close the house. As soon as the Moline Plow Company had levied their writ, the defendants telegraphed to all their creditors, that they might come in and arrange their claims by having them secured or satisfied in some way. On the third day after the levy by the plaintiff the defendants replevied their property. The defendants, on the 18th July, 1884, filed their answer admitting the indebtedness to W. D. Cleveland, and reconvened for damages for wrongfully and maliciously suing out and levying the attachment, and for an excessive levy; alleging, in substance, that they were doing a general retail business as merchants; that they were at the time of the levy, at both their stores, doing a profitable and prosperous business; were well established in trade, having the confidence of their customers; they were solvent and in good credit at home and abroad where they had been accustomed to deal with wholesale merchants; and had always before enjoyed the credit and reputation, in all their business relations, of dealing fairly and honestly with their creditors, customers and all other persons; that the plaintiff, being actuated with the intent and motive to injure, embarrass, harass and oppress defendants, wrongfully and maliciously sued out and caused to be levied the writ of attachment, seizing goods, wares and merchandise, comprising the stocks of both stores, amounting to the value of $7,000, and closed the doors of both their stores. That no grounds existed authorizing the writ; the affidavit of plaintiff that defendants had disposed in whole or part of their property for the purpose of defrauding their creditors was false. That by the acts of plaintiff complained of, defendants' customers were driven away. That they were deprived of the profits of their business, and of their good name, reputation and credit at home and abroad, and were deprived of the use of their stock and trade, and pray for damages for $9,000. On the 4th of December, 1884, plaintiff filed an amended answer, alleging that the debts sued on had matured. And on 10th

June, 1885, filed a supplemental answer, alleging, in substance, that whatever damage defendants had suffered was occasioned by levy of the writ issued out of the United States circuit court. That plaintiff had levied his writ at the instance of the defendants. That by giving an "iron clad" note, and giving security to other creditors, defendants had destroyed their credit. That the defendants were largely indebted, and had no property in sight to secure even a portion of their debts.

On 13th June, 1885, a trial was had, resulting in a verdict and judgment in favor of plaintiff for $1,961.61 against Stansell & Younger and their sureties on their replevy bond, from which judgment, after a motion for new trial was overruled, defendants appealed.

*Second assignment of error:* The court erred in sustaining the objection of plaintiff to the following testimony offered by the defendants. The defendants offered to prove that the profits of their business at Dawson for the year preceding the levy of attachment by plaintiff were $6,000, as shown by bill of exceptions.

*Third assignment of error:* The court erred in allowing the plaintiff to introduce in evidence, over the objection of defendants, a paper purporting to be a telegram sent by Stansell & Younger to the plaintiff; the plaintiff having failed to show that said paper was an original message or a copy of an original message; and it further appearing that if it was the telegram sent by defendants and received by plaintiff, plaintiff's attachment was levied before his receipt of the telegram, as set forth in defendants' bill of exceptions.

*Seventh assignment of error:* The court erred in allowing the plaintiff, over defendants' objection, to read in evidence the petition, affidavit, bond and writ of attachment, in the case of August Bernheim & Bower v. Stansell & Younger, filed and issued in the United States circuit court, at Waco, on 7th March, 1884, such attachment having never been levied and the debt having been paid before the issuance and levy of the writ sued out by the plaintiff, as set forth in bill of exceptions No. 5.

*Eighth assignment of error:* The court erred in paragraph 4 of the charge of the court to the jury, in this, that the jury are instructed that "the claims of the plaintiff, as set forth and specified in his petition, being admitted by defendants, plaintiff is entitled to a verdict for the amount of the same, with interest thereon to this date;" when the admission of defendants, as shown by their answer, extends only to the "*indebtedness alleged* in plaintiff's petition," and

not to the claim for attorneys' fees as set forth in plaintiff's petition.

*Tenth assignment of error:*  The court erred in instructing the jury as set forth in the sixth paragraph of the charge of the court, in defining malice to be personal spite or ill-will of one person toward another; thereby limiting the jury in their consideration and measure of exemplary damages on account of the maliciously suing out the writ of attachment by the plaintiff.

*Fifteenth assignment of error:*  1. The verdict and judgment is contrary to the law and evidence, in that attorneys' fees are charged against the defendants unjustly; the suit having been instituted before the indebtedness was due.  2. The judgment is against the sureties on the replevy bond for the amount of the attorneys' fees set forth in the verdict and judgment, when the attorneys' fees claimed by plaintiff are not alleged as a part of the indebtedness to secure which the attachment was sued out and levied.

*Frost, Barry & Lee,* for appellants.

*Simkins & Neblett,* for appellee, on the introduction of the telegram, cited: McCue v. Klein, 2 L. R., 227.

On the question of attorneys' fees they cited: Ammon v. Thompson, 34 Tex., 237; Dugey v. Hughes Brothers, 2 Law Review, 207.

WILLIE, CHIEF JUSTICE.— The sole question in this case is: Was the attachment sued out through malice and without probable cause?

As bearing upon the question of malice in suits like the present, the following general principles seem to be well recognized:

" In a legal sense, any unlawful act done wilfully and purposely to the injury of another, is, as against that person, malicious." 2 Greenl. on Ev., sec. 453.

To sustain an averment of malice in a suit of malicious prosecution, the plaintiff must show that the charge against himself, upon which the suit is based, was wilfully false.  Malice may be proved by direct evidence or it may be inferred from circumstances.  Id.

It may be inferred by the jury from the want of probable cause. This, however, is not an inference of law, but is " an implication subject to be repelled by facts and circumstances indicating a fair and legitimate purpose and honest pursuit of a claim believed to be just."  Culbertson v. Cabeen, 29 Tex., 247.

Probable cause for the prosecution of a civil suit " may consist of such facts and circumstances as lead to the inference that the party

was actuated by an honest and reasonable conviction of the justice of the suit." And "it must appear that the facts, or so much of them as were sufficient to induce the belief, were communicated to the defendant before he commenced the prosecution of his suit." Id., 454.

The attachment in this case was sued out on Sunday the 16th of March, 1884. The bond was made the day before, at Houston; but the affidavit was not made until the 16th, and from that time must date such knowledge of facts as the appellee possessed, and upon which he acted in commencing the attachment proceedings. This affidavit was made at Corsicana, by the appellee's agent; but as the appellee is to be held liable for the acts of this agent, he is entitled not only to the benefit of his own knowledge, but also that of the agent as to facts justifying the attachment.

What were the facts and circumstances in reference to the conduct and affairs of Stansell & Younger which were known to Cleveland or his agent at the time of suing out the attachment? The affidavit stated that the defendants Stansell & Younger had disposed of their property with intent to defraud their creditors. The affiant knew that the appellants had been forced to execute a note, the amount of which, together with ten per cent. attorneys' fees, could, without notice, be converted into a judgment in any court having jurisdiction of the subject-matter. This was in itself evidence of bad commercial credit and a want of confidence on the part of the payees in the financial integrity of the appellants. This note had been paid, but the affiant did not know it. He knew, too, that Bernheim Bros. & Co. had sued out an attachment against Stansell & Younger, but did not know that their debt had been paid. This was a further evidence of the suspicion with which they were regarded by their creditors. Cleveland had received a dispatch from his attorneys at Corsicana in reference to his debt against Stansell & Younger, which caused him to send his agent there to look after it. Upon the agent's arrival he finds the entire real estate of the firm, which constituted the bulk of their property, mortgaged to other creditors; no debts paid by them so far as he knew; the United States marshal about to seize their goods under process of attachment; and other creditors looking on and awaiting the development of events, and apparently ready to attach at a moment's warning, and if they attached first, Cleveland would probably lose his debt. These facts showed also that other creditors believed that a cause of attachment existed against the firm. When we add to these the fact that they had refused but a short time before to se-

cure Cleveland's debt, but had secured others before and afterwards; and that they had apparently paid no debt with the proceeds of the sales of their property, but disposed of them for their own benefit, we can hardly say that there was not sufficient evidence to satisfy Cleveland that they had disposed of their property with intent to defraud their creditors. If the jury had so found, we certainly should not have disturbed their verdict.

The only particle of evidence which could have justified the jury in implying malice was the fact that Cleveland had examined the records a short time before, and was satisfied with the condition of the appellants' affairs. But it is not shown that any mortgage was on record at that time, except, perhaps, that of Willis & Bro. At the date of the attachment, their whole real estate was covered with mortgages. That Cleveland was satisfied, at the date of examining the records, does not, therefore, show that he had any reason to be satisfied at the time he sued out the attachment.

It is clear that no express malice against the appellants was proved. Indeed, the appellants do not seem to contend that such malice existed.

Admitting that want of probable cause was established by the evidence, which is exceedingly doubtful, the facts we have detailed show plainly that, if the appellee proceeded without sufficient cause, his conduct was not influenced in the least by malice. He had done nothing wilfully and purposely to the injury of appellants, and he had made no charges against them which he had reason to believe were false. His conduct showed a fair and legitimate purpose to honestly pursue a just claim against his debtors. Had the jury inferred malice, under the circumstances, this court would have set aside their verdict as unsupported by any evidence whatever.

This being the case, it follows that the charge of the court complained of in the tenth assignment of error, whilst erroneous, did no damage to the appellants, and could have had no effect upon the verdict of the jury. There was no proof of any species of malice whatever; and, under any charge that the court might have given, the jury were bound to find for the appellee; and if they failed to do so, this court would have reversed the judgment based upon their verdict. Any charge defining malice correctly would have been inapplicable to the case, and the appellant would have derived no more benefit from it than from the erroneous one given to the jury.

This disposes also of the second assignment of error. If there was no malice, the testimony as to profits was inadmissible. The

appellants having no case on that question, had no right to prove vindictive damages of any kind whatever.

As to the admission of the telegram from appellants to Cleveland, it seems to have come from the party to whom it was directed, and there was no showing that it had been in any manner altered after it was received; and the original dispatch had been destroyed. But if those were not sufficient reasons for receiving it in evidence, it is enough to say that there was no proof to show malice, and this would have been but cumulative evidence upon a matter already proven beyond all doubt, and hence could not have influenced the verdict in any manner whatever.

We do not find in the statement of facts, the petition, affidavit, bond, or writ of attachment in the case of August Bernheim & Bower *v.* Stansell & Younger; and hence it is not necessary to consider the exception to their introduction. Although the court overruled the ·objections to their admission, they do not seem to have been introduced; oral proof that the writ was sued out was produced; but to this no objection seems to have been made.

None of the objections based upon the allowance of attorneys' fees are well taken. These fees were to become part of the debt in case of suit, and are expressly claimed in the petition. The answer admitted all the indebtedness alleged in the petition which included these fees. It matters not that the suit was instituted before the debt was due. The debt was not paid at maturity, and this authorized the plaintiffs to proceed to judgment upon the note, and that authorized the collection of the attorneys' fees. The language of the note is that these fees are to be paid if the note is collected by law; and this note was so collected.

The amount found by the· jury, and for which judgment was rendered against the defendants and their sureties in the replevy bond, is not as much as was shown to be due in the affidavit for attachment. Neither is it as much as the principal of the debt sued on. The court was authorized to apply the $500 found for the defendant to the payment of interest and attorneys' fees before deducting any portion of it from the principal debt. For that the sureties were certainly bound.

There is no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered November 27, 1885.]