REAVLEY, Circuit Judge:
 

 The single issue presented for review is whether a judgment of a federal bankruptcy court discharging the debt of a defendant held liable in a malicious prosecution action operates as collateral estoppel in favor of the other defendants. We hold that collateral estoppel was properly invoked and affirm.
 

 I.
 

 Three different lawsuits make up the procedural history of this case. For convenience, we denominate them Suits No. 1, 2 and 3, based chronologically on the date they began. In this opinion we decide the latest round of Suit No. 2, which has already come before this court once.
 
 Seven Elves, Inc. v. Eskenazi,
 
 635 F.2d 396 (5th Cir.1981).
 

 Suit No. 1 was an involuntary bankruptcy proceeding brought on December 16, 1975 against appellant Seven Elves, Inc. in the United States District Court for the Southern District of Texas. The suit was initiated by Jack Eskenazi, appellees Gary Lieb-man and Jack Riback, and other creditors of Seven Elves. Eskenazi agreed to act on behalf of Liebman and Riback in filing and prosecuting the action. We previously found that “Liebman and Riback executed a power-of-attorney authorizing Eskenazi to act as their agent in retaining counsel and in prosecuting the bankruptcy cause, but did not themselves participate directly in the action.” 635 F.2d at 398. The bankruptcy proceeding was decided in favor of Seven Elves on grounds that involuntary bankruptcy was improper because Seven Elves was solvent. In so holding, however, the court noted that “[f]rom the inception of doing business, the Alleged Bankrupt continually experienced a shortage of cash and from time to time was delinquent in paying certain creditors.”
 

 Suit No. 2, the current suit, is a malicious prosecution action brought on December 1, 1976 by Seven Elves against Eskenazi, Lieb-man, Riback and others. The suit seeks recovery for injuries allegedly sustained as a result of the involuntary bankruptcy proceeding. Jurisdiction is founded on diversity of citizenship. On October 23, 1978, after the defendants failed to appear at trial, a default judgment of $250,000 was entered against them. The defendants chose to
 
 *243
 
 deal with the default judgment in different ways.
 

 Liebman and Riback took an appeal to the Fifth Circuit, successfully arguing that the trial court should have granted relief from the judgment under Fed.R.Civ.P. 60(b). We reversed the judgment and remanded for a new trial on the merits. 635 F.2d at 404.
 

 While the Fifth Circuit appeal was pending, Eskenazi filed Suit No. 3, a voluntary bankruptcy petition brought in the United States Bankruptcy Court for the Central District of California, seeking to discharge his debt to Seven Elves resulting from the default judgment. Seven Elves intervened and objected to the discharge on grounds that the default judgment was a debt for “willful and malicious injury” under 11 U.S.C. § 523(a)(6) and hence not discharge-able. After a trial, the court found for Eskenazi in a decision dated April 14, 1980, and discharged the debt. Finding of Fact 11 of the court’s decision states: “There is no evidence that the filing of the aforesaid Petition for Involuntary Bankruptcy was unjustified; to the contrary, there is evidence that SEVEN ELVES was in financial distress at the time of such filing.”
 

 Seven Elves appealed Suit No. 3 to the Ninth Circuit Bankruptcy Appellate Panel, which affirmed, rejecting the argument that the court below was clearly erroneous in finding that Eskenazi “had acted without malice and with probable cause in joining in the filing of an involuntary bankruptcy petition against Seven Elves, Incorporated.”
 
 [1]
 

 In re Eskenazi,
 
 6 B.R. 366, [1978-81 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,663, at 78,152 (Bkrtcy. 9th Cir.1980).
 

 The issue before us now is whether the district court, after remand from the Fifth Circuit, correctly held that the finding in Suit No. 3 that Suit No. 1 was not brought for purposes of willful and malicious injury operates as collateral estoppel on the issue of probable cause in Suit No. 2. It is a sign of our times that an original debt of some $800 owed by Seven Elves to Liebman and Riback generated a diversity suit, two bankruptcy proceedings, an appeal to the Ninth Circuit and two trips to the Fifth Circuit, none of which has rewarded anyone by so much as a dime.
 

 II.
 

 A federal court applies federal common law in deciding the collateral es-toppel effect of a prior federal judgment.
 
 Reimer v. Smith,
 
 663 F.2d 1316, 1325 n. 9 (5th Cir.1981) (dictum).
 
 [2]
 
 Under federal
 
 *244
 
 law, three elements must be shown for collateral estoppel to apply:
 

 (1) The issue at stake must be identical to that involved in the prior action;
 

 (2) the issue in the prior action must have been actually litigated; and
 

 (3) the determination of the issue in the prior action must have been necessary and essential to the prior judgment.
 
 Johnson v. United States,
 
 576 F.2d 606, 615 (5th Cir.1978), ce
 
 rt. denied,
 
 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The appellants dispute that the first and third elements have been met.
 

 There is no question but that the third element has been met. The determination urged as collateral estoppel by Lieb-man and Riback is the California bankruptcy court’s finding in Suit No. 3 that the default judgment was dischargeable. Seven Elves argued in that proceeding that the debt was not dischargeable because it fell within the exception set out in 11 U.S.C. § 523(a)(6). This issue was not merely necessary to the court’s decision to discharge the debt; it was in fact the
 
 only
 
 issue in dispute and the whole basis for Suit No. 3 and the Ninth Circuit appeal.
 

 The heart of our current inquiry is whether the first element of identity of the issues is met. Resolving this inquiry requires us to answer two questions. First, is a finding that under the Bankruptcy Code a suit was not brought for purposes of willful and malicious injury equivalent to a finding of probable cause under Texas tort law? Second, does the fact that Eskenazi had probable cause necessarily mean that Lieb-man and Riback had probable cause as well? Under the uncontroverted facts of this case, the answer to both questions is yes.
 

 The California bankruptcy court’s finding that Eskenazi was entitled to a discharge, was substantially equivalent to a finding that he initiated the proceeding against Seven Elves with probable cause. Under 11 U.S.C. § 523(a)(6), an individual is not entitled to a discharge from any debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.” In rejecting Seven Elves’ reliance on this provision, the bankruptcy court found that “[t]here is no evidence that the filing of the aforesaid Petition for Involuntary Bankruptcy was unjustified; to the contrary, there is evidence that SEVEN ELVES was in financial distress at the time of such filing.” The court found that Hugh Dodds, a collection manager for Esk-
 
 *245
 
 enazi’s company, Esko Industries, Inc., had made repeated attempts to collect a debt owed by Seven Elves, and had recommended to Eskenazi that an involuntary bankruptcy suit be filed on the basis of his unsuccessful efforts.
 

 We have defined “willful and malicious” under section 523(a)(6) to mean “without just cause or excuse.” Willful means intentional and malicious adds the absence of just cause or excuse.
 
 Matter of Dardar,
 
 620 F.2d 39, 40 (5th Cir.1980);
 
 Vickers
 
 v.
 
 Home Indemnity Co.,
 
 546 F.2d 1149, 1150 (5th Cir.1977); 1 Collier, Bankruptcy ¶ 17.03 (1978). Since Eskenazi’s suit was intentional, to find that he was justified in having the suit brought due to the financial condition of Seven Elves is equivalent to finding that he acted with probable cause.
 

 Under Texas law, lack of probable cause is a necessary element of a malicious prosecution action. A prosecutor has probable cause if he acts as an ordinarily or reasonably prudent person would act under the circumstances,
 
 Pate v. Stevens,
 
 257 S.W.2d 763, 769-70 (Tex.Civ.App.—Texarkana 1953, writ dism’d w.o.j.); 37 Tex.Jur.2d
 
 Malicious Prosecution
 
 § 17 at 538 (1962), or if the facts and circumstances “lead to the inference that the prosecutor was actuated by an honest and reasonable conviction of the justice of the suit.”
 
 Stansell & Younger v. Cleveland,
 
 64 Tex. 660, 663-64 (1885); 37 Tex.Jur.2d
 
 Malicious Prosecution
 
 § 18 at 540 (1962).
 

 Appellant does not seem to dispute that the bankruptcy court’s decision amounted to a finding of probable cause as to Eskena-zi. Instead, the thrust of its argument is that a finding of probable cause as to Esk-enazi does not amount to a finding of probable cause as to Liebman and Riback. It argues that Eskenazi’s business acumen and knowledge of the financial condition of Seven Elves differed from those of Liebman and Riback.
 

 Eskenazi’s business acumen is irrelevant to probable cause. As explained above, the test of probable cause is essentially an objective one, and asks whether an ordinarily or reasonably prudent person would have acted as the prosecutor did. To quote the language most frequently used in the Texas cases, probable cause means “the existence of such facts and circumstances as would excite the belief, in a
 
 reasonable mind,
 
 acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.”
 
 Pendleton v. Burkhalter,
 
 432 S.W.2d 724, 727 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref’d n.r.e.);
 
 J.C. Penney Co. v. Gilford,
 
 422 S.W.2d 25, 28 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref’d n.r.e.) (emphasis added). “Reasonable mind” suggests an objective test that looks to whether the prosecutor, given the facts available to him, acted as a reasonable man would in bringing legal action. Therefore, the particular business skills of Mr. Eskenazi are not at issue in determining whether Suit No. 1 was initiated with probable cause.
 

 Seven Elves argues that, even if the test is an objective one, it nevertheless depends on “the facts within the knowledge of the prosecutor .. .. ”
 
 Pendleton, supra.
 
 It argues that the knowledge available to Esk-enazi was not the same as that available to Liebman and Riback. This argument is unconvincing because we have already found that Liebman and Riback took a passive role in the involuntary bankruptcy cause, and extended a power of attorney to Eskenazi authorizing him to act as their agent in prosecuting the action on their behalf.
 
 Seven Elves, Inc.
 
 v.
 
 Eskenazi,
 
 635 F.2d 396, 398 (5th Cir.1981).
 

 Under ordinary agency concepts the knowledge of an agent is imputed to his principal.
 
 Victory v. State,
 
 138 Tex. 285, 158 S.W.2d 760, 764 (1942);
 
 Wellington Oil Co. of Delaware v. Maffi,
 
 136 Tex. 201, 150 S.W.2d 60, 63 (1941);
 
 Cambridge Companies, Inc. v. Williams,
 
 602 S.W.2d 306, 309 (Tex.Civ.App.—Texarkana 1980),
 
 affirmed,
 
 615 S.W.2d 172 (Tex.1981);
 
 Great American Mortgage Investors v. Louisville Title Insurance Co.,
 
 597 S.W.2d 425, 432 (Tex.Civ. App.—Fort Worth 1980, writ ref’d n.r.e.).
 
 *246
 
 Agency rules have been applied by Texas courts in malicious prosecution actions. Where the agent may be held liable, so may the principal if the agent was acting within the scope of his employment and had actual or implied authority to bring the prosecution.
 
 Bass
 
 v.
 
 Metzger,
 
 569 S.W.2d 917 (Tex.Civ.App.—Corpus Christi 1978, writ ref’d n.r.e.);
 
 Yianitsas v. Mercantile National Bank of Dallas,
 
 410 S.W.2d 848 (Tex.Civ. App.—Dallas 1967, no writ);
 
 Moran Utilities Co. v. Childs,
 
 392 S.W.2d 536 (Tex.Civ. App.—Beaumont 1965, writ ref’d n.r.e.);
 
 Bennett v. Heath Furniture Co.,
 
 390 S.W.2d 505 (Tex.Civ.App.—Eastland 1965, no writ). In
 
 Stansell & Younger v. Cleveland,
 
 64 Tex. 660 (1885), a malicious prosecution action had been brought against the appellee for causing an attachment of the appellants’ merchandise to secure a debt. The Texas Supreme Court held that “as the appellee is to be held liable for the acts of this agent, he is entitled not only to the benefit of his own knowledge, but also that of the agent as to the facts justifying the attachment.”
 
 Id.
 
 at 664. Thus, any knowledge of Eskena-zi that justified his bringing the involuntary bankruptcy petition in Suit No. 1 should be imputed to Liebman and Riback.
 

 Of course, if the principal knows
 
 more
 
 than the agent, then probable cause may exist for one and not the other. If Liebman and Riback knew that Seven Elves was actually solvent, they might have lacked probable cause even though Eskenazi was justified in bringing the action based on his own knowledge. However, the position of Seven Elves is that the principals knew less than Eskenazi. In its brief it asserts that “Liebman and Riback knew nothing of the financial affairs of Seven Elves at the time [of the involuntary bankruptcy petition] other than the fact that their bill was not paid.” The uncontradicted deposition testimony of both Liebman and Riback supports this position.
 

 AFFIRMED.
 

 [1]
 

 . The bankruptcy court in Suit No. 3 held that it was not bound by the default judgment against Eskenazi in Suit No. 2. The bankruptcy appellate panel agreed, relying on the following cases for its conclusion that the prior decision of a non-bankruptcy tribunal does not operate as res judicata when a bankruptcy court determines dischargeability questions:
 
 Brown v. Felson,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979);
 
 In re Kasler,
 
 611 F.2d 308 (9th Cir.1979);
 
 Lawrence T. Lasagna, Inc. v. Foster,
 
 609 F.2d 392 (9th Cir.1979),
 
 cert. denied,
 
 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980);
 
 In re Houtman,
 
 568 F.2d 651 (9th Cir.1978).
 

 [2]
 

 . The precise issue here is whether a federal court sitting in
 
 diversity
 
 applies federal or state law in deciding the collateral estoppel effect of a prior judgment of a federal court which heard a case under its
 
 federal question
 
 jurisdiction. Suit No. 3, a bankruptcy case brought under federal question jurisdiction, is offered here as collateral estoppel in Suit No. 2, a diversity case. Although
 
 Reimer
 
 suggests as a general proposition that federal law applies when deciding the effect of a prior federal judgment, our research turns up no recent Fifth Circuit cases squarely addressing the issue as framed above.
 

 “Federal law clearly governs the question whether a prior federal court judgment based on federal question jurisdiction is res judicata in a case also brought . .. under federal question jurisdiction.”
 
 Aerojet-General Corp. v. Askew,
 
 511 F.2d 710, 715 (5th Cir.),
 
 cert. denied,
 
 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).
 
 See also Southwest Airlines Co. v. Texas International Airlines,
 
 546 F.2d 84 (5th Cir.),
 
 cert. denied,
 
 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977) (res judicata effect of prior case brought under federal question jurisdiction with pendent state claims governed by federal law in subsequent injunction action treated as “supplemental or ancillary” to first action for jurisdiction purposes). Federal law also governs when the first suit is a diversity suit, and the second suit is brought under both diversity and federal question jurisdiction “whether considered as a federal question case or a diversity case.”
 
 Aerojet-General, supra,
 
 at
 
 *244
 
 718. See
 
 also Stovall v. Price Waterhouse Co.,
 
 652 F.2d 537 (5th Cir.1981). Finally, we have repeatedly held that federal res judicata rules apply in a diversity case in determining the effect of a prior diversity case.
 
 Hardy v. Johns-Manville Sales Corp.,
 
 681 F.2d 334, 337 (5th Cir.1982);
 
 Hicks
 
 v.
 
 Quaker Oats Co.,
 
 662 F.2d 1158, 1166 (5th Cir.1981);
 
 Rufenacht v. Iowa Beef Processors, Inc.,
 
 656 F.2d 198, 202 (5th Cir.1981),
 
 cert. denied,
 
 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982);
 
 Commercial Box & Lumber Co. v. Uniroyal, Inc.,
 
 623 F.2d 371, 373 (5th Cir.1980);
 
 Cleckner v. Republic Van & Storage Co.,
 
 556 F.2d 766, 769 n. 4 (5th Cir.1977);
 
 Willis v. Fournier,
 
 418 F.Supp. 265 (M.D.Ga.),
 
 aff’d without opinion,
 
 537 F.2d 1142 (5th Cir.1976). These rules are the same for collateral estoppel as for other forms of res judicata.
 
 Stovall, supra,
 
 at 540;
 
 Johnson v. United States,
 
 576 F.2d 606, 611 (5th Cir.1978), cert.
 
 denied,
 
 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981);
 
 Willis, supra,
 
 at 266.
 

 In short, the law of this circuit is that federal law governs in the federal question/federal question, diversity/diversity, and diversity/federal question contexts. Since our precedents clearly require the use of federal law in the diversity/diversity context, federal law should apply a fortiori to the federal question/diversity case presented here. If anything, concerns over respecting state courts and policies are less serious in the federal question/diversity context than in the diversity/diversity context. Correspondingly, concerns with preserving the integrity of federal judgments and procedure expressed in our decisions are if anything greater here than in the diversity/diversity context. We note further that the
 
 Erie
 
 doctrine’s policy of preventing forum shopping is not in jeopardy, since state courts generally are required to follow federal rules in deciding the preclusive effect of a prior federal question judgment of a federal court. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4468 at 656-57 (1981). Thus, when a federal question decision is offered as collateral estoppel in a diversity suit, “[mjost cases can be decided readily on the ground that state courts would be obliged to apply federal rules of preclusion, so federal courts are of course free to do so.”
 
 Id.
 
 § 4472 at 740.