**SIDAG AKTIENGESELLSCHAFT, a Corporation of Switzerland and Sicilia Di R. Biebow & Co., a Limited Partnership of Italy, Plaintiffs-Appellants,**

**v.**

**SMOKED FOODS PRODUCTS CO., INC., a Corporation of the State of Mississippi, Marcus Cox, Ronald C. Cox and Sales U.S.A., Inc., Defendants-Third Party Plaintiffs-Appellees,**

**v.**

**Sicilia Di R. BIEBOW, Rolf Biebow & Eurolim, Ltd., Third Party Defendants-Appellants.**

**No. 84-4664.**

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1985.

Ringer, Clapp & Clark, Roger C. Clapp, Florence, Miss., Stephen Schnitzer, Livingston, N.J., and Morris M. Schnitzer, Newark, N.J., for plaintiffs-appellants.

Young, Scanlon & Sessums, James Leon Young and E. Stephen Williams, Jackson, Miss., for Marcus Cox and Smoked Foods.

L. Dan Tucker, John M. Cone, Dallas, Tex., for Ronald Cox & Sales.

Before CLARK, Chief Judge, POLITZ and JONES, Circuit Judges.

## OPINION

EDITH HOLLAN JONES, Circuit Judge:

Appellants Sidag, A.G. and Sicilia Di R. Biebow & Company (collectively, "Sicilia") challenge the Mississippi trial court's dismissal of two defendants and partial summary judgment in favor of the remaining two defendants on grounds of res judicata and collateral estoppel. Sicilia created the litigational concoction from which it seeks relief when it filed two simultaneous lawsuits, in Texas and Mississippi, for breach of an exclusive citrus juice distributorship agreement. Sicilia lost in Texas, providing the basis for some preclusive relief to the defendants. We affirm the dismissal and reverse and remand with respect to the partial summary judgment.

## I. THE FACTS

In 1967, Sicilia, a foreign producer of lemon and lime juice, contracted with defendant Smoked Foods, headquartered in Mississippi, to market Sicilia's lemon juice in the United States. The contract provided that while it was in effect Smoked Foods was "not to sell, use, represent or be interested in any competing lemon juice products." Further, if Smoked Foods terminated the contract without just cause a five-year covenant not to compete would arise against Smoked Foods. Defendant Marcus Cox was at that time the president of Smoked Foods. In 1970 Marcus Cox's son, defendant Ronald Cox, moved to Dallas, Texas, and there formed U.S. Marketing, a firm that bought Sicilia's lemon juice from Smoked Foods, at a profit to Smoked Foods, for resale in the southwest United States. In 1974 Ronald Cox succeeded his

father as president of Smoked Foods, but Marcus Cox remained active in the business, and Ronald Cox continued to run U.S. Marketing in Dallas. In 1975 Sicilia and Smoked Foods amended their contract to include lime juice as well as lemon juice and to require payment in Swiss francs only. Within two years, a changing currency market rendered Swiss franc payments onerous to Smoked Foods and began to reduce its sales of Sicilia juices. The relations between manufacturer and distributor suffered.

In early 1978, unknown to Sicilia, Ronald Cox explored the possibility of competing with Sicilia. He contacted a bottle designer and asked various suppliers for price quotations. At about the same time, unknown to Ronald or Marcus Cox, Sicilia sought out another possible distributor, Hagmann & Hagmann (H & H), which recommended to Sicilia an attorney who would explore ways of breaking the contract with Smoked Foods. In August, 1978 Marcus Cox requested prices for limes from a possible supplier. Sicilia's discovery of this request led it to direct a telex message on October 20 to Marcus Cox containing questions and directives about their contract and requiring a reply no later than October 24. (By this time, Sicilia had confirmed a first shipment of products to H & H.) Marcus Cox responded to the telex on October 25, explaining that he had just returned from vacation. Nevertheless, on November 22, Sicilia terminated Smoked Foods' distributorship allegedly due to Marcus' failure to reply timely to the October telex. In December 1978, Marcus Cox sent an order for lime juice to Sicilia, but Sicilia rejected it immediately, reiterating that the contract was terminated.

Ronald Cox, having decided to compete with Sicilia during the fall, 1978, formed a new company, the defendant Sales, U.S.A. ("Sales"), which marketed its first lime juice in mid-1979 under the brand name 'Pompeii.' In November 1979, Sicilia filed suit against Smoked Foods and Marcus and Pauline Cox in federal district court in Mississippi, and against Sales and Ronald Cox in federal district court in Texas.

## II. THE ISSUES

The Mississippi district court dismissed Sales as a defendant and also entered partial summary judgment on Count V of Sicilia's claim against Marcus Cox and Smoked Foods. Appellants present this court with two principal issues. The first is whether Sicilia is bringing the same claim against Ronald Cox and Sales in the Mississippi court that it brought and lost against them in the Texas court. If it is the same claim, Sicilia would normally be precluded under the doctrine of res judicata from relitigating that claim. The second issue is whether Sicilia should be precluded from asserting Count V, part of which repeats the breach of contract allegations litigated in Texas, against new defendants, Smoked Foods and Marcus Cox. Proper analysis of these issues requires a careful review of the matters pending in each forum.

## III. PROCEDURAL HISTORY

### (a) *The Texas Litigation*

Sicilia alleged three counts against Ronald Cox and Sales in Texas: unfair trade dress imitation under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), breach of the Sicilia-Smoked Foods contract, and patent infringement.[1]

The Texas court's judgment, rendered in August 1982, in favor of Ronald Cox and Sales following a bench trial, was summarized by a panel of this Court on appeal.

> On Sicilia's contract claim, the district court found that Sicilia had expressly terminated the contract either by its November 1978 telex or by that of December 1978. Since Sicilia terminated the contract, the covenant not to compete was not activated. Only Smoked Foods' termination of the contract without just

1. The patent claim was dismissed by the time plaintiffs filed their first amended complaint in January, 1981.

cause would trigger the non-compete covenant.

The district court found that Smoked Foods has no ownership or financial interest in Sales, that Ron was not a party to the Sicilia-Smoked Foods contract, and that the corporations were not mere alter egos of Marcus or Ron Cox. The court therefore refused to "pierce the corporate veil," held that neither of the two non-compete provisions had been breached [that is, neither the five-year clause nor the agreement that Smoked Foods as Sicilia's exclusive distributor would distribute lemon and lime juice only from Sicilia], and dismissed Sicilia's contract claims.

Neither Sales nor Ron Cox was a party to the Sicilia-Smoked Foods distribution contract.

Assuming that Cox and Sales were obligated under the Sicilia-Smoked Foods contract, Sicilia still could not prevail on its contract claim. The district court found that neither Ron's nor Marcus' actions constituted a repudiation and that Sicilia terminated the contract. Since Smoked Foods did not terminate the contract, the five-year covenant not to compete was not triggered. Moreover, Smoked Foods was not "interested in" a competing product while the distribution contract was in effect. Sicilia had terminated by the end of 1978, and appellees had not produced or sold any citrus juice prior to that time.

732 F.2d 417, 434–435 (1984). This Court affirmed the judgment on Sicilia's contract action, but reversed and remanded the Lanham Act claim.

(b) *The Mississippi Litigation*

In Mississippi, Sicilia alleged five counts against Smoked Foods, and Marcus and Pauline Cox. The first four concerned certain funds allegedly due to Sicilia that were being held by Smoked Foods. The fifth, count amended in January 1981 to join Ron Cox and Sales as defendants (and to dismiss Pauline Cox), quoted the same relevant contractual provisions as the Texas pleadings, and it alleged essentially the same breaches of contract. In addition, the fifth count referred to the preceding four counts and alleged the violation by defendants of Miss. Code § 97–23–85 (1972), which prohibits and punishes secondary boycott conspiracies.

In October, 1982, Smoked Foods moved to amend its answer and to obtain partial summary judgment because the just-entered judgment in Texas precluded assertion of Sicilia's fifth count in Mississippi. Ron Cox and Sales also sought summary judgment as to the fifth count, and all defendants were awarded this relief in August, 1983.

Sicilia moved for reconsideration by the Mississippi court. That court apparently decided to await the outcome of the appeal of the Texas litigation, and accordingly it withheld ruling on the motion until September 1984. Following this Court's disposition, it dismissed Ron Cox and Sales with prejudice and dismissed Count V of Sicilia's complaint with prejudice as to Smoked Foods and Marcus Cox. This appeal followed, based on a judgment certified pursuant to Fed.R.Civ.Proc. 54(b).

## IV. RES JUDICATA AND THE CLAIMS AGAINST THE DEFENDANTS

Federal preclusion rules apply in this case, not state rules. "[W]e have repeatedly held that federal res judicata rules apply in a diversity case in determining the effect of a prior diversity case." *Seven Elves, Inc. v. Eskenaze,* 704 F.2d 241, 244 n. 2 (5th Cir.1983). *See also Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 337 (5th Cir.1982). "These rules are the same for collateral estoppel as for other forms of res judicata." *Seven Elves, supra* at 244 n. 2.

The doctrine of res judicata, or claim preclusion, prevents the parties or their privies from relitigating claims that were or could have been raised in a prior action. *Cromwell v. County of Sac,* 40 Otto 351, 94 U.S. 351, 352, 24 L.Ed. 195 (1877). Claim preclusion "makes a final, valid judg-

ment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding." *Woods Exploration and Producing Company v. Aluminum Company of America,* 438 F.2d 1286, 1312–13 (5th Cir.1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972), quoting 1B Moore, Federal Practice ¶ 0.405[1] at 181 (1984). The doctrine contemplates, at a minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty. *Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556, 559 (5th Cir.1983) (en banc).

The *Nilsen* opinion recited the settled law for the Fifth Circuit in determining the applicability of res judicata:

> For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*Nilsen, supra,* at 559, quoting *Kemp v. Birmingham News Company,* 608 F.2d 1049, 1052 (5th Cir.1979).

Embodied in this test is the

> black-letter law that res judicata, by contrast to narrower doctrines of issue preclusion, bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, ... not merely those that were adjudicated. And it is equally settled that one who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.

*Nilsen* at 560.

Sicilia focuses differently on this test for each of the district court's preclusive determinations. As to Ronald Cox and Sales, Sicilia contends for several reasons that res judicata, as above defined, should not apply even though its prerequisites are satisfied in this case.[2] None of Sicilia's arguments is persuasive. Sicilia suggests that *Nilsen* extends the bar of res judicata only to cases that are filed successively, rather than those that are pending simultaneously. To create such an exception to res judicata would make no sense. There is no reason why defendants should be required to defend, or courts to hear, additional or multiple cases, free from the protections of res judicata, simply because the plaintiff chose to file them piecemeal at the same time rather than in succession.[3] Sicilia claims that it was "forced" to litigate in two courts simultaneously in order to pursue full relief. Why this is so, given the breadth of jurisdiction created by applicable long-arm statutes, has never been fully explained. Nevertheless, the only reason advanced by Sicilia for failing to include the substance of the Mississippi statutory conspiracy claim against Ronald Cox and Sales in the Texas litigation is that, "the trial of the unique Mississippi claims and issues, without the prime Mississippi defendants, would have been about as feasible as maintaining a secure seat on a two-legged stool." Litigation often proceeds to trial, due to settlements or strategic decisions, with one or more defendants absent. Moreover, Marcus Cox was deposed on four occasions and his testimony was entered in the record of the Texas litigation.

2. Sicilia concedes that the "same cause of action" was at issue in both the Texas and Mississippi litigation. In *Nilsen,* the court *en banc* specifically adopted the "transactional" definition of a "claim" enunciated in the Second Restatement of Judgments (1982). *Nilsen, supra,* at 559–60, n. 4. Sicilia admits that both the Texas and Mississippi actions arose out of the same contract and that its Mississippi Count V could have been asserted within the jurisdiction of the Texas court sitting in diversity. Sicilia sought the same relief in Texas and Mississippi, although it was requested pursuant to different legal theories.

3. In *Montana v. United States,* the Supreme Court enforced the related doctrine of collateral estoppel against the United States, where it had attempted, by maintaining two simultaneous cases, to avoid such preclusion: 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

This expression of discontent on the part of Sicilia is unconvincing.

Finally, Sicilia has cited the Second Restatement of Judgments § 26 for the proposition that there are exceptions to the principles of res judicata. It is not shown that any of these exceptions have been adopted by this circuit, nor that any would be factually applicable here. In short, the district court in Mississippi properly dismissed Ronald Cox and Sales based on res judicata.

Sicilia correctly contends, however, that the magistrate's partial summary judgment in regard to Count V for Marcus Cox and Smoked Foods cannot be grounded on res judicata because there was no identity of parties between those defendants and Ronald Cox and Sales. Such identity, or "mutuality" is in this circuit clearly a prerequisite to the broad bar of relitigation that characterizes claim preclusion.[4] If the award in favor of Marcus Cox and Smoked Foods is to stand, it must be by virtue of collateral estoppel, or issue preclusion, regarding distinct facts and legal conclusions rendered by the Texas court.

## V. COLLATERAL ESTOPPEL FOR THE BENEFIT OF MARCUS COX AND SMOKED FOODS

Collateral estoppel, or issue preclusion, bars a party from relitigating issues of fact or law that were necessary to the court's judgment and actually determined in a prior action. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Southern Pacific Railway Company v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Mutuality of parties is no longer necessary for the application of issue preclusion. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It is understood, of course, that a party shall have had a full and fair opportunity to litigate an issue before being bound by the result in a later trial. *Montana, supra,* 440 U.S. at 153, 99 S.Ct. at 773, 59 L.Ed.2d at 217.

The Texas court made the following pertinent conclusions, among others, which were necessary to its decision: (1) that neither Sales, nor Ronald Cox signed the Smoked Foods-Sicilia contract; (2) that the various corporations were not alter egos of Ronald or Marcus Cox; (3) that there is no compelling reason to "pierce the corporate veil" with respect to either Sales or Smoked Foods; (4) that neither the activities of Ronald Cox, nor of Marcus Cox for Smoked Foods, repudiated the Sicilia contract; (5) that Sicilia and not Smoked Foods or Sales terminated the contract in October or November, 1978; (6) that the anti-competition clause of the contract was not triggered; (7) that Smoked Foods had no interest in any competing citrus product and thus did not violate ¶ 12 of the contract; and (8) that Sales did not begin selling its competing Pompeii product until July, 1979. These findings must be given full preclusive effect by the Mississippi court, in favor of Marcus Cox and Smoked Foods.

Sicilia does not appear to dispute that it may not relitigate these issues pursuant to the general application of collateral estoppel. As with its res judicata argument, however, Sicilia urges that fundamental fairness and equity should mitigate their effect in its Mississippi case,[5] and it hopes

4. *But see Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir.1972). The arguments for nonmutual claim preclusion beyond situations involving indemnification or derivative relationships, and protection of a pre-existing judgment, "are substantially weaker than the arguments for nonmutual issue preclusion." C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure: Jurisdiction § 4464 (1981).

5. Inasmuch as Sicilia's appeal to equity lies in a contention that it was deprived of a full and fair opportunity to litigate against Ron Cox and Sales in Texas, we are unpersuaded. See *Montana, supra,* and *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860 (5th Cir.1985). Sicilia's complaints boil down to its "inability" to sue all defendants in one forum and the alleged unavailability of Marcus Cox as a live witness at trial. These contentions were rejected previously. If Sicilia foresaw the drawbacks of going to trial in Texas in the absence of a critical defendant as a live witness, it could have moved for a nonsuit and pursued full relief

to salvage portions of Count V irrespective of these precluded issues.

Dissecting the effect of collateral estoppel upon Count V is an interesting exercise. To the extent of Count V's almost verbatim restatement of the operative facts and contract provisions that Sicilia relied upon in Texas, any claim against Marcus Cox and Smoked Foods based on those is clearly foreclosed. However, some novel issues are raised. The parties do not dispute, for instance, that Count V's reference to the preceding Mississippi Counts I–IV can not preclude decision on those claims for conversion, misappropriation of escrowed moneys, and an account due, which were never raised in Texas. Count V further identifies a Mississippi statutory-based conspiracy claim which was not litigated in Texas. On less secure ground, Sicilia urges that Count V includes claims based on a conspiracy by Marcus Cox and Smoked Foods "to abdicate the business and territory to be exploited by Ronald Cox and Sales ..."; breach of implicit good faith and best efforts obligations by Smoked Foods; and fraudulently induced breach of the Sicilia contract perpetrated by Marcus Cox. These last claims are not obviously stated in Count V due to the parallel between it and the Texas pleading regarding breach of contract.

It is hard to escape the conclusion that, shorn of the precluded issues, little remains of either the statutory claim or the allegedly implicit contractual claims. For instance, the only pleaded facts that are said to violate Miss.Code § 97–23–85 (1972) —the "interest" of Marcus and Ronald Cox in a competing citrus juice business and their attempts to lure Sicilia customers to it—have been seriously undermined by precluded matters. Specifically, the Texas court found that Marcus Cox had no such "interest" in a competing company and therefore had no duty to refrain from competing with Sicilia after it terminated the contract. The Texas court also found that Pompeii did not even start selling its product until up to 9 months after Sicilia terminated the Smoked Foods contract. However, on the present record, we are unable to conclude that there is no genuine issue of material fact concerning the conspiracy claim or the allegedly implicit contractual claims, as would be required to sustain the magistrate's partial summary judgment on Count V. Fed.R.Civ.Proc. 56(c). We therefore remand this case to the magistrate with the following instructions. Sicilia may continue its lawsuit against Marcus Cox and Smoked Foods predicated upon

(a) Counts I–IV of the Amended Complaint filed January 26, 1981;

(b) the claimed violation of Miss.Code § 97–23–85 (1972); and

(c) if they are raised by the pleadings, the conspiracy "to abdicate the business and territory to be exploited by Ronald Cox and Sales"; breach of implicit obligations of good faith and best efforts; and Marcus Cox's fraudulent inducement of breach of contract by Smoked Foods.

To effectuate the principles of collateral estoppel, none of these claims may be supported by the facts or matters, illustrated but not exhaustively listed above, which were distinctly and necessarily found by the Texas court.

Based on the foregoing discussion, the magistrate's dismissal of Ronald Cox and Sales, U.S.A., is affirmed, and the partial summary judgment in favor of Marcus Cox and Smoked Foods Products Company, Inc., is affirmed in part and reversed in part and remanded.

against all defendants in the simultaneously filed Mississippi action. It is not so much the lack of a full and fair opportunity to litigate in Texas as it is appellants' unfortunate election of that opportunity, for whatever strategic reasons, to which we are not privy, that caused their downfall.