# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2013

Lyle W. Cayce
Clerk

No. 11-10950

DONNA CLYCE, Individually, and as next friend of C.C., a minor; MARK CLYCE, Individually, and as next friend of C.C., a minor,

Plaintiffs–Appellants,

v.

HUNT COUNTY, TEXAS; HUNT COUNTY JUVENILE BOARD; JAMES A. BROWN, Chief Juvenile Probation Officer, in his official capacity; ANTHONY K. SEARCY, Juvenile Detention Officer; TINA R. JOBE, Juvenile Detention Officer,

Defendants–Appellees.

Consolidated with No. 11-11133

DONNA CLYCE, Individually, and as next friend of C.C., a minor,

Plaintiff–Appellant,

v.

HUNT COUNTY TEXAS; HUNT COUNTY JUVENILE BOARD; JAMES A. BROWN, Chief Juvenile Probation Officer, in his official capacity; ANTHONY K. SEARCY, Juvenile Detention Officer; TINA R. JOBE, Juvenile Detention Officer,

Defendants–Appellees.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-351

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:[*]

Donna and Mark Clyce (the Clyces) sued Hunt County, Texas, the Hunt County Juvenile Board, and individual detention officers under 42 U.S.C. § 1983, alleging that the defendants violated their minor son C.C.'s constitutional right to medical care while he was detained at the Hunt County Juvenile Detention Center (the Detention Center). The district court granted summary judgment in favor of all defendants. The Clyces appeal only the grant of summary judgment in favor of Hunt County and the Hunt County Juvenile Board (collectively, Hunt County). We affirm because the Clyces have failed to present evidence that C.C.'s injuries were caused by a Hunt County policy.

I

Thirteen-year-old C.C. had been placed on probation in Ellis County, Texas and was admitted to the Detention Center in Hunt County on February 25, 2008 after violating the terms of his probation. Several days later, on March 4, C.C. began complaining of leg and hip pain. Detention Center staff scheduled a March 10 appointment with a physician. In the interim, C.C. continued to complain that he was in pain, did not eat his meals, and did not leave his room for scheduled activities. On March 8, Donna Clyce visited C.C. at the Detention Center, was concerned about her son's poor physical condition, and requested that detention officers take him to an emergency room. Detention Center staff

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contacted the on-call probation officer in Ellis County and relayed Donna Clyce's concerns. According to Ellis County, the probation officer advised that the Detention Center had permission to take C.C. to the emergency room "if he need[ed] to go." According to the Detention Center staff, however, the probation officer instructed the staff not to take C.C. to the hospital unless his condition worsened because he was already scheduled to see a physician. In any case, the staff did not take C.C. to an emergency room. Instead, he was seen two days later by a physician during the previously scheduled appointment, and C.C. was diagnosed with a bruised hip, bruised ribs, a muscle pull, and an arm fracture. It is now known that the physician failed to diagnose a life-threatening methicillin-resistant staphylococcus aureus (MRSA) infection.

After this appointment, C.C. returned to the Detention Center and continued to complain of pain and to exhibit signs that he was in pain. He did not participate in scheduled activities. His sister visited him at the Detention Center the day after he had been seen by the physician. She was alarmed by his physical condition and requested that he receive immediate medical attention. Again, Detention Center staff declined to take C.C. to an emergency room. However, the next day, on March 12, C.C. was transported out of the Detention Center for a court hearing, and his Ellis County probation officer observed C.C.'s physical condition. That officer diverted him to an emergency room. C.C. was eventually diagnosed with the MRSA infection and underwent several extensive surgeries. He now has "severe muscle wasting from his illness, complications [a]ffecting his heart valves and will continue to have advancing arthritic disease."

The Clyces filed suit, seeking damages under § 1983. The Clyces alleged that individual detention officers violated C.C.'s Fourteenth Amendment rights by denying him reasonable access to medical care and that Hunt County failed to train or supervise its employees properly and "implemented a policy,

procedure, custom and practice through which . . . employees continually ignore detainees' requests for medical attention."

The district court granted summary judgment in favor of the individual detention officers, holding that they were entitled to qualified immunity from suit in their individual capacities. After further discovery, the district court also granted summary judgment in favor of Hunt County, holding that the Clyces offered no evidence that a Hunt County policy caused C.C.'s injuries. The Clyces appeal only the summary judgment in favor of Hunt County and do not contest the qualified-immunity summary judgment in favor of the individual defendants.

## II

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."[1] A municipality may be sued under § 1983 but not under a theory of respondeat superior.[2] Rather, a municipality may only be held accountable if the deprivation of constitutional rights "was the result of municipal 'custom or policy.'"[3] A municipal custom or policy may be (1) a "policy statement, ordinance, regulation or decision that is officially adopted" by either the municipality's lawmaking officers or a policymaker for the municipality;[4] (2) "[a] persistent, widespread practice of city officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents

---

[1] 42 U.S.C. § 1983.

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Colle v. Brazos Cnty., Tex., 981 F.2d 237, 244 (5th Cir. 1993).

[3] City of Okla. City v. Tuttle, 471 U.S. 808, 817 (1985).

[4] Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

municipal policy";[5] or (3) in some cases, "a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations."[6] The municipal custom or policy must be "the moving force of the constitutional violation."[7]

## A

Municipalities may be liable under § 1983 if a "policy" of inadequate training or supervision caused the violation of the plaintiff's constitutional rights.[8] In order to hold a municipality liable under § 1983 for failure to train or supervise, the plaintiff must show that (1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's injury.[9] The Supreme Court has emphasized that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[10]

The district court rejected the Clyces' failure-to-train and failure-to-supervise claims, holding that they had made "no threshold showing that Hunt County's training policies and procedures were inadequate" and that they did not introduce sufficient evidence of deliberate indifference.

---

[5] Id.

[6] Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 406 (1997) (internal quotation marks omitted).

[7] Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (internal quotation marks omitted).

[8] City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989); Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 850 (5th Cir. 2009).

[9] Conner v. Travis Cnty., 209 F.3d 794, 796 (5th Cir. 2000) (per curiam); see also Peterson, 588 F.3d at 850; Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

[10] Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

In opposition to summary judgment, the Clyces introduced evidence of the progression of C.C.'s illness, the numerous requests for treatment made by C.C. and his family members, and the Detention Center's delay in providing such treatment. The Clyces offered no evidence regarding the training received by detention officers, whether it was inadequate, or whether specific additional training should have been offered.

Hunt County introduced evidence establishing that the Detention Center was in compliance with all state-law requirements, including those regarding health care and the qualifications and certification of employees, during the relevant time periods and that the Detention Center had a number of policies and procedures related to the provision of health care to detainees.

This court has held that "when officers have received training required by Texas law," as the Hunt County officers did here, "the plaintiff must show that the legal minimum of training was inadequate."[11] The Clyces have not offered any such evidence and have therefore failed to make a threshold showing that Hunt County's training was inadequate.[12]

The Clyces also failed to establish deliberate indifference as to both their failure-to-train and failure-to-supervise claims. "Deliberate indifference is more than mere negligence."[13] The plaintiff must show that "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need" for more

---

[11] Sanders-Burns v. City of Plano, 594 F.3d 366, 381-82 (5th Cir. 2010).

[12] See Burge, 336 F.3d at 372 (holding that the plaintiff had offered insufficient evidence to establish deliberate indifference in a failure-to-train claim, in part because the plaintiff did not present evidence that the training received was inadequate or evidence of "any specific additional training" that the employees should have received).

[13] Conner, 209 F.3d at 796.

training or supervision.[14]  "[A] showing of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights."[15]

The Clyces concede that they have not offered evidence of similar constitutional violations.  They instead assert that there is a single-incident exception that permits them to show deliberate indifference if C.C.'s injury was a highly predictable consequence of Hunt County's failure to train or supervise and that the failure was the moving force behind the constitutional violation. The Clyces fail to meet this burden.  The Clyces have not introduced evidence that the detention officers employed by Hunt County failed to receive training or that the training was inadequate in any way.

As to the failure-to-supervise claim, the Clyces assert that "Hunt County did not engage an active supervisor" for the Detention Center and point to the affidavit of James Brown (Brown), the chief juvenile probation officer for Hunt County during the relevant period, in which Brown states that C.C.'s medical care was handled by detention officers and that he was not personally involved in those decisions.  Brown was responsible for all of the operations of the Hunt County Juvenile Probation Department and was charged with directing "program design and implementation of probation and detention services."  In light of these expansive responsibilities, the mere fact that Brown delegated day-to-day operations, including medical care of detainees, to the employees of the Detention Center does not by itself constitute evidence that Hunt County was

---

[14] City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989); see also Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 380-83 (5th Cir. 2005) (applying the Canton deliberate indifference standard to both a failure-to-train claim and a failure-to-supervise claim).

[15] Brumfield v. Hollins, 551 F.3d 322, 329 (5th Cir. 2008) (internal quotation marks omitted).

deliberately indifferent to the need for greater supervision at the Detention Center.

B

The Clyces also claim that C.C.'s injuries were the result of Hunt County's policies (1) not to have a medical professional on site at the Detention Center and (2) to delay medical treatment of detainees. To establish municipal liability for these policies, the Clyces must show (1) the existence of an official policy or custom, (2) of which "a policymaker [could] be charged with actual or constructive knowledge," and (3) that the policy or custom was the moving force behind the constitutional violation alleged.[16]

Hunt County concedes that there was no on-site medical professional at the Detention Center. However, even assuming that the Clyces presented evidence sufficient to establish that this was an official municipal policy, they have failed to present evidence that the policy was the moving force behind the alleged delay in providing medical care to C.C. To satisfy the moving-force prong, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[17] "A plaintiff must also show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences."[18] Because the Clyces have failed to establish that the alleged policy of not having an on-site medical provider is itself unconstitutional,

---

[16] Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010) (internal quotation marks omitted).

[17] Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997).

[18] James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted).

they must show not only a direct causal link but also deliberate indifference. They have failed to meet this burden.

As we have already noted, the Clyces' summary judgment evidence merely establishes the progression of C.C.'s illness. It also shows that Hunt County did, in fact, take C.C. to a medical professional to receive care for his medical conditions, although that physician failed to diagnose the MRSA infection. Even viewing this evidence in the light most favorable to the Clyces, we cannot discern a "direct causal link" between the lack of an on-site health-care professional and C.C.'s injuries. Similarly, the evidence presented by the Clyces creates no genuine dispute as to whether the policy "was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result."[19]

The Clyces also allege that Hunt County has a policy of delaying medical care to detainees; however, they have failed to establish that such a policy exists. Hunt County has a number of policies related to the medical care and treatment of detainees. Although the alleged policy of delaying medical care is not contained in those written policies, the Clyces argue that it nevertheless qualifies as a "custom." However, "[a] customary municipal policy cannot ordinarily be inferred from [a] single constitutional violation[]."[20] As the Clyces offered no summary judgment evidence supporting the existence of this custom except for evidence specifically related to C.C., the district court correctly granted summary judgment in favor of the county as to this claim.

*      *      *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[19] See Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) (internal quotation marks omitted).

[20] Id. at 581.