# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2020

Lyle W. Cayce
Clerk

No. 18-11189

Chance Marcus Clyce, and on behalf of all those
similarly situated; Donna Jill Clyce, and on behalf of
those similarly situated; Mark Clyce, and on behalf of
all those similarly situated,

*Plaintiffs—Appellants*,

*versus*

Frederick Farley, Investigator and Supervisor for
Hunt County Juvenile Detention Center, individually
and in his official capacity; Kenneth Wright,
individually and in his official capacity; Shanigia
Williams, individually and in her official capacity,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-793

Before Graves, Costa, and Engelhardt, *Circuit Judges*.

No. 18-11189

James E. Graves, Jr., *Circuit Judge*:*

In 2009, the parents of Chance Clyce filed a lawsuit against multiple defendants affiliated with the Hunt County Juvenile Detention Center for neglecting to provide medical care to their son while in the Detention Center's custody. The district court dismissed claims against two defendants without prejudice for improper service and granted summary judgment in favor of the remaining defendants. We affirmed the dismissal.

In 2014, Chance and his parents filed a second lawsuit against multiple defendants affiliated with the same Detention Center and the Texas Juvenile Justice Department. The district court dismissed the claims for being untimely under the relevant statute of limitations. We reversed the dismissal and remanded for further proceedings, including consideration of res judicata and other issues presented. In 2018, the district court dismissed the case again, this time on res judicata grounds. We agree with Chance that res judicata should not apply here, so we REVERSE the dismissal and REMAND for further proceedings.

## I. Procedural and Factual Background

"In 2008, when he was thirteen years old, Chance suffered serious and sustained injuries while detained at Hunt County Juvenile Detention Center. Though some of the details are disputed, the parties agree that when Chance was released from the Detention Center only sixteen days after he arrived, he had lost several pounds, sustained bruises and a fractured arm, and contracted a life-threatening methicillin-resistant staphylococcus aureus ("MRSA") infection. Due to this severe infection, Chance required multiple

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

extensive surgeries on his joints and heart. He asserts that he continues to suffer chronic pain and will require future surgeries." *Clyce v. Butler*, 876 F.3d 145, 147 (5th Cir. 2017) (*Clyce II*).

In 2009, Donna and Mark Clyce, individually and as next friends of their minor son Chance, filed suit in the Northern District of Texas against Hunt County, Texas; Hunt County Juvenile Board (Board); Chief Juvenile Probation Officer James A. Brown; Detention Officer Anthony Searcy; Detention Officer Tina Jobe; Detention Officer Davis; Detention Officer Williams; and other unknown Detention Officers employed at the Detention Center. The Clyces alleged that the defendants were liable under 42 U.S.C. § 1983 for violating Chance's Fourteenth Amendment due process right to reasonable medical care, and that Hunt County and the Board were liable under the Texas Tort Claims Act for misusing property that caused Chance's injuries. The district court granted summary judgment in favor of Brown, Searcy, and Jobe on qualified immunity grounds. It also granted summary judgment in favor of Hunt County and the Board because the Clyces failed to provide sufficient evidence to support their § 1983 and tort claims. The district court dismissed without prejudice the claims against the remaining defendants, who were not timely and properly served. We affirmed the district court's decision. *See Clyce v. Hunt Cty.*, 515 F. App'x 319, 321 (5th Cir. 2013) (*Clyce I*), *cert. denied*, 571 U.S. 955 (2013).

In 2014, Chance, now an adult, and his parents filed a pro se lawsuit in the Western District of Texas against the Texas Juvenile Justice Department (TJJD); its interim Executive Director David Reilly; the Hunt County Juvenile Detention Center; various known and unknown employees and officials of the TJJD; and various known and unknown staff members of the Detention Center, including Investigator/Supervisor Frederick Farley, Detention Officer Kenneth Wright, and Detention Officer Shanigia Williams (who was named in the previous lawsuit, but not served).

The Clyces sued individually and on behalf of those similarly situated who were, are, or will be incarcerated at the Detention Center. Specifically, they alleged that Wright physically abused Chance on March 3, 2008; Farley lied in the investigation reports; and Williams failed to take Chance to the emergency room for medical treatment on March 8, 2008. They detailed a long list of reparative medical procedures that Chance had undergone and asserted that he still suffered from daily pain and would need additional surgeries in the future. In addition to individual compensatory and punitive damages, the Clyces sought to form a class composed of residents of the Detention Center whose claims of abuse were improperly denied. On behalf of the class, Chance requested declaratory and injunctive relief.

The TJJD filed a motion to dismiss based on Eleventh Amendment immunity grounds. Individual defendants affiliated with the TJJD filed a motion to dismiss. Farley, Wright, and Williams ("Appellees") also filed a motion to dismiss based on various grounds, including untimeliness, res judicata, and that the Detention Center was not a legal entity capable of being sued.

The case was transferred to the Northern District of Texas. The Clyces eventually obtained counsel and opposed all pending motions to dismiss. The district court dismissed the case, which only Chance appealed. We reversed the dismissal and remanded the case for further consideration, holding that Texas state law did not support the district court's conclusion that a next-friend lawsuit waived the tolling provision. *Clyce II*, 876 F.3d at 148–50. We noted, however, that a ruling of a timely lawsuit "does not permit Chance to re-litigate the merits of any already decided claims." *Id.* at 150. "Texas's tolling provision 'does not mean that an action commenced by, or on behalf of, a legally disabled individual can never be given preclusive effect.'" *Id.* (quoting *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755–56 (Tex.

1993)). We also granted the Clyces' motion to dismiss the TJJD and TJJD-affiliated defendants.

On remand, the magistrate judge ordered supplemental briefing on the "remaining grounds that support dismissal of this action." The Appellees filed a supplemental brief reiterating their res judicata arguments. Chance, represented by a new attorney, requested leave to file an amended complaint, seeking to clarify the original claims and delete defendants and the class action considerations. The proposed amended complaint listed Chance as the only plaintiff and named the Detention Center, Wright, and Williams as the defendants. The complaint alleged violations of Chance's First Amendment rights (via retaliation), Fourth Amendment rights (via excessive punishment), Eighth Amendment rights (via cruel and unusual punishment), and Fourteenth Amendment rights (via violation of his privacy, property and liberty interests, and equal protection rights). Chance also raised claims under the Rehabilitation Act of 1973 (RA) and the Americans with Disabilities Act (ADA). He sought damages for past and future physical and mental pain, medical and mental health expenses, physical impairment, and losses of educational opportunities.

The magistrate judge deferred consideration of the motion to amend, suggesting that the amendment would be futile if the action was barred by res judicata. Chance moved for reconsideration, which the district court granted in part, deferring its decision on amendment until receipt of Chance's supplemental briefing on the res judicata issue and why the amended claims survived dismissal. After receiving briefing from both sides, the magistrate judge issued a report recommending dismissal on res judicata grounds. The report concluded that the two lawsuits were based on the same set of relevant facts; Chance and the Clyces were in privity; the previous defendants and the Appellees were not in privity in the traditional sense, but the Appellees should have been named in the 2009 lawsuit under a theory of nonmutual

No. 18-11189

claim preclusion; and assuming that the Detention Center is a juridical entity capable of being sued, the first lawsuit alleged that the Board established and implemented the policies for the Detention Center, and this special relationship justified a finding of privity. The district court adopted the magistrate judge's report and dismissed the case. Chance timely appealed.

## II. Standard of Review

We review de novo the district court's order denying a motion to dismiss under Rule 12(b)(6). *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015). All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). We also review de novo the district court's determination that res judicata bars an action. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

## III. Legal Analysis

Chance argues that the district court improperly dismissed his claims on procedural and res judicata grounds, and that it abused its discretion in denying him the opportunity to amend his complaint. The Appellees contend that res judicata barred the instant case, and that Chance should not be afforded another opportunity to relitigate his claims against similar defendants. We address Chance's procedural challenges first, followed by the res judicata and amendment arguments.

## A. Procedural Challenges

Chance asserts the following procedural challenges on appeal: (1) res judicata is an affirmative defense that was improperly raised in a Rule 12(b)(6) motion, and the 2009 lawsuit should not have been considered in dismissing the case; (2) the attachment of the documents to the Rule 12(b)(6) motion converted the pleading to a motion for summary judgment, entitling

No. 18-11189

him to discovery; (3) the Appellees failed to set forth the standard of review and the burden of proof or specify their requested relief; and (4) the district court failed to address these challenges when granting the motion to dismiss. His arguments are all without merit.

First, Chance is correct that res judicata generally cannot be argued in a motion to dismiss but should instead be pleaded as an affirmative defense. *See Test Masters*, 428 F.3d at 570 n.2. However, dismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent on the face of the pleadings. *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). Chance also incorrectly argues that because the Appellees did not ask the court to take judicial notice of the prior lawsuit and the proposed amended complaint did not mention it, the district court was barred from considering the prior lawsuit. On the contrary, when ruling on a Rule 12(b)(6) motion, the district court may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The court was also entitled to take judicial notice of the 2009 proceeding on its own. *See* Fed. R. Evid. 201(c)(1).

Additionally, it is true that if matters outside the pleadings are presented to and not excluded by the court, the Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Snider v. L-3 Comms. Vertex Aerospace, L.L.C.*, 946 F.3d 660, 666 (5th Cir. 2019). However, because the documents attached to the motion to dismiss were from the 2009 lawsuit, the district court properly took judicial notice of them. *See Norris*, 500 F.3d at 461 n.9.

The challenges to the form of the Appellees' supplemental motion to dismiss are also meritless. Indeed, the supplemental motion did not specify the applicable standard of review, the burden of proof, or requested relief. However, the original motion to dismiss set forth the Rule 12(b)(6) standard.

And the supplemental motion explicitly requested that Chance's claims "be dismissed for failure to state a claim as they are barred by the doctrine of res judicata."

Lastly, the district court did consider Chance's procedural challenges to the Appellees' motion to dismiss. As the Appellees point out, Chance raised his procedural challenges in his objections to the magistrate judge's report. The district court stated that it had conducted a de novo review of the objections and then adopted the magistrate judge's report after finding no error. Accordingly, the district court did address Chance's procedural arguments, albeit not explicitly.

## B. Res Judicata

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, L.L.C. v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). True res judicata, or claim preclusion, is a "venerable legal canon" that "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (internal quotation marks and citation omitted). Claim preclusion applies where (1) the parties to both actions are identical or are in privity; (2) the first judgment is rendered by a court of competent jurisdiction; (3) the first action resulted in a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.* Chance disagrees with the district court's analysis of the first and fourth elements. We discuss both elements below, comparing the 2009 lawsuit with the proposed amended complaint in the instant case.

No. 18-11189

### i. Same Claim or Cause of Action

Chance argues that the prior lawsuit presented only Fourteenth Amendment claims arising out of his confinement in the Detention Center based on a failure to provide him necessary medical treatment. *Clyce I*, 515 F. App'x at 321–22. He notes that the proposed amended complaint included allegations of First, Fourth, Eighth, and Fourteenth Amendment violations. He also argues that under the ADA, the RA, and the Individuals with Disabilities Education Act (IDEA),[1] the defendants had a continuous duty to compensate him for expenses arising from their violations, and since those new obligations arose after his stay in the Detention Center, the new claims involved a different set of facts. The Appellees assert that the claims in both lawsuits were based on the same set of operative facts.

Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters*, 428 F.3d at 571. We apply the "transactional test" to determine whether the claims in the second suit arise from the "same nucleus of operative facts" as the prior claims. *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 504 (5th Cir. 2020). Under this test, courts must consider "whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Oreck Direct*, 560 F.3d at 402 (internal quotation marks, brackets, and citations omitted).

As the district court noted, the "transaction" in both the prior lawsuit and the instant case "is Chance's detention at the Hunt County Juvenile Detention Center in February and March of 2008." *See Clyce I*, 515 F. App'x

---

[1] The proposed amended complaint did not contain a claim under the IDEA. It is raised for the first time on appeal.

at 321–22. The fact that Chance now seeks to allege new constitutional and statutory violations arising out of his detention is insufficient to overcome res judicata. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016) ("True res judicata bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory."). Though Chance maintains that the injuries alleged in this lawsuit "occurred after he left the facility and were continuous" and that the defendants had a duty after he left to provide remedial and compensatory services, the actions (or inactions) giving rise to that purported duty nevertheless occurred during his detention. *See Agrilectric Power Partners, Ltd. v. Gene. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) ("If the factual scenario of the two actions parallel, the same cause of action is involved in both. The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry.").

Further, Chance did not allege that he had contact with any of the Appellees after he left the Detention Center or that they committed additional acts after his departure that resulted in the harm he suffered. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4409 (3d ed. 2017) ("[G]enerally it will be safe to assume that completed conduct gives rise to a single claim for all resulting harm, both that experienced at the time of suit and that which will continue into the future."). Thus, Chance's new claims arise out of the same nucleus of facts giving rise to the first lawsuit, and his new legal theory does not negate a finding of res judicata.

### ii. Identity of Parties

Chance also challenges the district court's conclusion that though the Appellees in the instant action were not identical to or in privity with the defendants in the first lawsuit in the traditional sense, the Appellees should

have been named in the 2009 lawsuit under a theory of nonmutual claim preclusion. Chance primarily argues that Williams, Wright, and Farley[2] are not in privity with the earlier defendants because Williams was dismissed from the first lawsuit without prejudice and Wright and Farley were not party to the first lawsuit.

In the first lawsuit, Chance named as defendants Hunt County, the Board, various named individuals including Williams, and unknown detention officers. Williams and the unknown detention officers were dismissed without prejudice due to failure to serve. The district court properly concluded that the Appellees were not parties in the first lawsuit. *See Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987) (stating that an individual does not become a party to a lawsuit unless they voluntarily appear or are validly served).

Nevertheless, res judicata does not require the parties of the two actions to be identical, as long as they are in privity. *Procter & Gamble*, 376 F.3d at 499; *Gulf Island-IV, Inc. v. Blue Streak-Gul Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994). "Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). We have recognized privity in three "narrowly-defined" situations where non-parties are "sufficiently close" that they have privity with parties in the first lawsuit: "(1) where the non-party is a successor in interest to a party's interest in property; (2) where the non-party controlled the prior

---

[2] The proposed amended complaint only named the Detention Center, Williams, and Wright as defendants, but Chance refers to Farley on appeal. Because Chance may seek an opportunity to amend his complaint and name Farley as a defendant, we include Farley in our privity analysis.

litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.*

Because the first two circumstances do not apply, we must determine whether the Appellees' "interests were adequately represented" by the defendants in the 2009 lawsuit. *Id.* Parties in a legally recognized relationship, such as agents, class representatives, trustees, legal guardians, and fiduciaries, typically adequately represent non-parties. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008). We have also applied claim preclusion to the vicarious liability relationship between a private employer and its employees. *See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989). However, "the concept of 'adequate representation' does not refer to apparently competent litigation of an issue in a prior suit by a party holding parallel interests; rather, it refers to the concept of virtual representation, by which a nonparty may be bound because the party to the first suit 'is so closely aligned with his [the nonparty's] interests as to be his virtual representative.'" *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985) (quoting *Aerojet General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)). "Privity is not established by the mere fact that persons may be interested in the same question or in proving the same set of facts." *Id.* (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 340 (5th Cir. 1982)).

Here, the previous and current individual defendants were coworkers at a county detention center.[3] It is undisputed that the Appellees are not in a

---

[3] On appeal, the Appellees do not address the district court's conclusion that they were not in privity with their county employer. We therefore decline to address whether privity exists between the Appellees and Hunt County or the Board. *See Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) ("We will not raise and discuss legal issues that [a litigant] has failed to assert.").

legally recognized relationship or a vicarious liability relationship with the previous defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that government officials cannot be held liable for their subordinates' unconstitutional conduct under a theory of respondeat superior). Instead, the Appellees rely heavily (as did the district court) on two district court cases stating that "members of the same government agency" are generally in privity. *See Chalmers v. City of Dallas*, No. 3:14-CV-36, 2014 WL 7174289, at *7 (N.D. Tex. Dec. 16, 2014); *McCoy v. Blossom*, Civ. No. 09-2146, 2014 WL 1120346, at *4 (W.D. La. Mar. 20, 2014).

We have recognized privity between "officers of the same government"—that is, between federal IRS agents and the IRS Commissioner, each of whom acted as a representative of the United States—who were sued for assessing an income tax deficiency. *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940)); *see also Lariscey v. Smith*, 66 F.3d 323, 1995 WL 535008, at *2 (5th Cir. 1995) (finding privity between government defendants who "were either the same persons or agencies or employees of the federal government" sued for their "civil RICO enterprise" depriving a prisoner of his invention and its revenues). We have also found privity between officers of the same state agency—i.e., between game wardens of the Texas Parks and Wildlife Department and other officials of the same Department—sued for investigating a fishery operation. *Fregia v. Bright*, 750 F. App'x 296, 300 (5th Cir. 2018). Privity existed in these cases because the plaintiff sought to relitigate the same agency action against different officers of the same agency. Similarly, privity was found in *Chalmers* because the plaintiff sued employees of the same government entity (the City of Dallas) for the fourth time over the state's statutory requirement that he register as a sex offender; that is, over a singular government action, not the individual actions of each employee. 2014 WL 7174289, at *7; *see also*

No. 18-11189

*Sunshine Anthracite*, 310 U.S. at 402–03 ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation *of the same issue* between that party and another officer of the government." (emphasis added)).

Privity, however, does not exist merely because the previous and current litigants work for the same government entity. In *Nagle v. Lee*, we refused to find privity between a sheriff and deputy sheriffs, where the sheriff was accused of negligent supervision and the deputy sheriffs were later sued for excessive force. 807 F.2d 435, 440 (5th Cir. 1987). We noted "the individual nature of [the sheriff's] presence" in the first suit and that the sheriff was not "acting as a representative of the officers." *Id*. n.4. It could not be said that the deputy sheriffs' interests were "adequately represented" by the sheriff in the prior lawsuit. *Meza*, 908 F.2d at 1266. Accordingly, the Fifth Circuit has never adopted a rule that privity exists between officers of the same government simply because they are coworkers; thus, the district court's reliance on *McCoy* was misplaced.

Guided by our precedent and the general principle that nonmutual claim preclusion is "generally disfavored," we cannot affirm the district court's dismissal on res judicata grounds. *NY Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 969 (S.D. Tex. 2014) (citation omitted); *see also Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.*, 776 F.2d 1270, 1275 n.4 (5th Cir. 1985) ("The arguments for nonmutual claim preclusion beyond situations involving indemnification or derivative relationships, and protection of a pre-existing judgment, are substantially weaker than the arguments for nonmutual issue preclusion." (internal quotation marks and citation omitted)). Unlike *Boone* and *Fregia*, Chance did not seek to relitigate the same official agency action. Instead, the previous defendants were sued for their individual acts of medical negligence, while the proposed amended complaint

14

No. 18-11189

enumerated distinct, discrete actions of each Appellee that could make them individually liable for Chance's injuries. Specifically, Chance alleged new facts against Wright for retaliation, sexual assault, and excessive force; Farley for lying in his investigatory reports; and Williams for retaliation and medical negligence. We doubt that the Appellees' interests were "adequately represented" by any of the defendants in the prior suit because only the Appellees would be personally liable for any judgments against them in the instant case. *Meza*, 908 F.2d at 1266; *cf. Harmon v. Dallas Cty.*, 927 F.3d 884, 891 (5th Cir. 2019) (noting that a state actor sued in an individual capacity for discrete actions must satisfy the judgment out of his own pocket). Indeed, the dismissal order in the first suit expressly stated that it was without prejudice as to Williams and the unnamed officials. Accordingly, the district court erred in finding privity between the prior individual defendants and the Appellees.[4]

## C. Leave To Amend Complaint

Lastly, we address Chance's argument that the district court abused its discretion in denying his motion for leave to amend his pleadings. Courts should "freely give leave" for parties to amend pleadings "when justice so requires," FED. R. CIV. P. 15(a)(2), and they should favor granting leave to amend unless a party unduly delayed raising the claim, the motion resulted from bad faith or a dilatory motive, a litigant had been given previous opportunities to cure deficiencies which were not exercised, the opposing party would suffer undue prejudice, or an amendment would be futile. *See Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) (citing

---

[4] On appeal, Chance does not challenge the district court's finding of privity between the Detention Center and the Board, so we deem the issue abandoned. *See Brinkmann*, 813 F.2d at 748. Accordingly, on remand, Chance is precluded from bringing claims against the Detention Center.

*Foman v. Davis*, 371 U.S. 178, 182 (1962)). Pro se litigants should generally have an opportunity to amend their complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009).We normally review the denial of a motion to amend for abuse of discretion, but where the district court's denial of leave to amend was based solely on futility, we apply a de novo standard of review. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

After obtaining counsel, Chance requested leave to amend his pro se complaint in order to name Chance as the only plaintiff and the Detention Center, Wright, and Williams as the only defendants; delete the class action considerations; and clarify his original claims. The magistrate judge suggested that the amendment would be "futile" if the action were barred by res judicata. The district court allowed Chance to submit supplemental briefing as to how the proposed amended claims would survive res judicata. Once it concluded that claim preclusion should apply, the motion to amend was denied.

We cannot say that the district court abused its discretion in denying leave to amend. The amendment would not have necessarily precluded a finding of res judicata because the proposed amended complaint still named the Appellees as defendants and only clarified the original claims against them. Nevertheless, on remand, Chance is free to file another motion requesting permission to amend, which the district court should consider granting in light of the federal rules' liberal policy of allowing amendments to pleadings. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

No. 18-11189

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's judgment dismissing the case and REMAND for further proceedings consistent with this opinion.